IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| EMPLOYERS MUTUAL CASUALTY CO., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 08 C 7408 |
| KEYSTONE ELECTRIC COMPANY, INC.; KEYSTONE MECHANICAL INDS. OF WISC., INC., d/b/a DiPietro Mechanical Inds., Inc.; KEYSTONE SERVICE CO., d/b/a DiPietro Plumbing; KEYSTONE HEATING & COOLING, INC.; and YALE SMITH, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Employers Mutual Casualty Company (EMC) has sued four corporations and an individual, Yale Smith, to recover funds and collateral pursuant to an indemnity agreement that each of them signed. Smith has asserted an affirmative defense in which he alleges that he signed the agreement only in his capacity as president of the corporations and that the agreement cannot be enforced against him because he received no consideration as an individual. EMC has moved to strike Smith's affirmative defense. For the following reasons, the Court grants EMC's motion.

### Facts

EMC has sued Keystone Electric Company, Keystone Mechanical Industries of Wisconsin, Keystone Service Company, and Keystone Heating & Cooling (collectively, Keystone), and Yale Smith, the president of each of those entities. Keystone performed

work for various entities that required Keystone to purchase surety bonds to guarantee obligations to union workers.

As a condition for issuance of the surety bonds, EMC required the defendants to enter into a General Application and Agreement of Indemnity, executed on November 18, 2002. The agreement provided, in relevant part:

> This agreement is made by the Undersigned for the continuing benefit of the Surety [EMC] . . . for the purposes of saving it harmless and indemnifying it from all loss and expense in connection with any Bonds executed on behalf of any one or more of the following persons, firms, or corporations: Keystone Mechanical Industries, Inc., Keystone Electric Company, Inc. . . . DiPietro Mechanical Industries, Inc, DiPietro Plumbing . . . Keystone Heating & Cooling, Inc. . . . Yale Smith . . . , Long Grove, Illinois . . . (hereinafter any one of which may be the Principal).
>
> . . .
>
> [Whereas], the Undersigned have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from cancelling said Bonds.

Smith signed on behalf of each of the five corporations on a signature line that bore the title "President". He also signed on a signature line that bore the word "Individual." The Agreement included both an "Individual Acknowledgment" and "Corporate Acknowledgment."

EMC issued surety bonds to various third party entities. It received claims on the bonds and was required to pay out a total of around $390,000. EMC then requested that the defendants fulfill their obligations to indemnify EMC and to reimburse it for its losses. After the defendants failed to do so, EMC filed this suit.

EMC has made claims for, among other things, breach of contract. Smith has asserted an affirmative defense in which he states that he

2

> received no consideration for executing the Agreement. As evidenced by the bonds themselves, the bonds were provided by the Plaintiff for the benefit of the corporate defendants solely. Plaintiff expressly executed such bonds in his corporate capacity only, as an agent for the corporate defendants, and not on an individual basis. Plaintiff is therefore barred from collecting against Defendant due to a lack of consideration.

Answer, Aff. Def. 1. EMC has filed a motion to strike the affirmative defense as legally insufficient.

## Discussion

A court may strike an affirmative defense if it is legally insufficient on its face. *See Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The standard for deciding a motion to strike an affirmative defense is effectively the same as for a motion to dismiss a complaint for failure to state a claim. *See, e.g., Renalds v. S.R.G. Restaurant Group, Chicago, LLC*, 119 F. Supp. 2d 800, 802-03 (N.D. Ill. 2000).

Under current standards, the pleader – in this case Smith – must make enough factual allegations to raise a right to relief above a "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007). The Court ordinarily would accept Smith's allegations as true and consider them in the light most favorable to him. *See, e.g., Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). But if documents attached to the pleadings contradict the allegations, the documents trump the allegations. *See, e.g., Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007). This principle serves the "important purpose of weeding out non-meritorious claims for which a trial is not necessary." *Flannery v. Recording*

3

*Industry Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004).

Smith contends that EMC cannot hold him individually liable under the indemnity agreement because he signed the agreement only on behalf of the corporations and not as an individual and because he received no consideration as an individual. These assertions are undermined by the terms of the agreement and by established legal principles.

The Court applies Illinois law because that is the law both sides contend applies. Illinois law treats indemnity agreements the same as other contracts, and thus general principles of contract law apply. *Taracorp, Inc. v. NL Indus., Inc.,* 73 F.3d 738, 743 (7th Cir. 1996). When the terms of a written contract are unambiguous, the contract is determinative of the parties' intentions. *See Zella Wahnon and Assocs. v. Bassman,* 79 Ill. App. 3d 719, 723, 398 N.E.2d 968, 971 (1979). In other words, if the contract's language unambiguously provides an answer to the question before a court, the court's analysis ends there. *See Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 456 (7th Cir. 1991).

In this case the contract is unambiguous. Smith quite plainly signed it as an individual. The contract language quoted earlier clearly provided that Smith was one of the "Undersigned" who undertook – alongside the corporations – to indemnify EMC. It is equally clear that Smith did not just sign the agreement as president of each of the corporations: in addition to doing that, he signed on a signature line that made it clear he was signing in his capacity as an "Individual." And the agreement included an "Individual Acknowledgment" in addition to a "Corporate Acknowledgment." As was the case in *84 Lumber Co. v. Denni Const. Co.,* 212 Ill. App. 3d 441, 571 N.E.2d 231

4

(1991), it is crystal clear that Smith signed the agreement as an individual. *Id.* at 443, 571 N.E.2d at 232-33. His claim to the contrary is undermined by the unambiguous language of the indemnity agreement.

Smith's claim of lack of consideration is equally lacking in merit. Under Illinois law, "any act or promise which is of benefit to one party or disadvantage to the other is sufficient consideration to support a contract." *Steinberg v. Chicago Med. Sch.,* 69 Ill. 2d 320, 331, 371 N.E.2d 634, 639 (1977). Even if Smith himself did not personally benefit from EMC's issuance of the surety bonds, the corporations (of which he was president) undeniably did. Consideration to another party is sufficient to support a contract, and thus the fact that the benefit of the bonds flowed directly to the Keystone entities and not to Smith personally is of no consequence. *See, e.g., State Bank of Geneva v. Sorenson,* 167 Ill. App. 3d 674, 684, 521 N.E.2d 587, 594 (1988). In any event, Smith signed an agreement that unambiguously stated that he, along with each of the other parties described as the "Undersigned," had a "substantial, material[,] and beneficial interest in the obtaining of the Bonds." In short, the agreement contains a plain statement that *each* of the signatories – both the corporations and Smith – had an interest in obtaining the bonds. This represents adequate consideration for each of them, including Smith. *See generally RIV VIL, Inc. v. Tucker*, 979 F. Supp. 645, 658 (N.D. Ill. 1997) (rejecting a contention indistinguishable from the one Smith has made in this case).

## Conclusion

For the reasons stated above, the Court grants EMC's motion to strike [docket

no. 29].

                                                  _____
                                                      MATTHEW F. KENNELLY
                                                      United States District Judge

Date: August 18, 2009